UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| DENNIS KIMMEL, | No. ED CV 11-00908-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

        developed the record;

    2.    Whether the ALJ properly assessed Plaintiff's credibility;

    3.    Whether the ALJ properly considered the evidence at Step 5. (JS at 4.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ DID NOT ERR IN FAILING TO FURTHER DEVELOP THE MEDICAL RECORD**

At Step Two of the sequential evaluation process, the ALJ concluded that Plaintiff has the severe impairment of non-insulin-dependent diabetes mellitus. (AR 11.) The ALJ assessed that Plaintiff's residual functional capacity ("RFC") does not include any limitations due to vision.

On May 21, 2006, Plaintiff reported that he had visual disturbances described as a progressive sensitivity to bright light with waxing and waning symptoms. (AR 246.) He was advised to follow up with the ophthalmology department (AR 265), and a week later, reported no vision problems or blurred vision. (AR 262-263.) He was monitored for development of cataracts. (AR 256-259.)

In November 2007, when Plaintiff sought refills for his diabetes medication because he had run out of that medication three months previously, he complained that he had blurry vision which had been worsening in the past three months. (AR 14, 246, 255.)

Withing two months of that complaint, Plaintiff had cataract surgery in one eye. After a week, he was doing well. (AR 250, 271,

273.) In March 2008 he had cataract surgery on his other eye. (AR 243, 268-269, 272.) On April 1, 2008, he reported that he was doing well and seemed better. (AR 240.) His visual acuity soon improved to 20/50-3 in his right eye and 20/40 in his left eye. (AR 14, 240.) Although a week later, on April 8, 2008, he reported that vision in his right eye was still blurry, and by July 2008, reported decreased vision in both eyes (AR 238-239), the ALJ determined that by September 9, 2008, as substantiated by his treating ophthalmologist, his visual acuity was 20-70 (minus 2), and 20-70 (minus 1) without correction. (AR 13, 235.)

In his decision, the ALJ reviewed visual acuity measurements between July 2007 and September 2008, which indicated substantial improvement and a level of vision which should not more than minimally limit Plaintiff. (AR 13, 235-244, 247-248, 257-258.)

Plaintiff received a consultative internal medicine examination ("CE") in May 2008. (AR 180-184.) This examination indicated that he had vison of 20-70 and 20/50 with a pinhole correction. (AR 181.) The physician assessed no visual restrictions (AR 184). Relying upon this examination, in addition to other records, a State Agency reviewing physician in June 2008 concluded that no work restrictions should be imposed based on visual acuity limitations. (AR 189-193.) Similarly, in that month, a record analyst determined that further examination by an ophthalmologist was not necessary. (AR 195.)

Plaintiff claims that the ALJ did not have a sufficient longitudinal period of medical records to examine, and further, essentially ignored Plaintiff's complaints that his vison deteriorated three months after his eye surgeries, and continued to deteriorate. During the administrative hearing before the ALJ (AR 20-37), Plaintiff

3

testified as to additional medical care he had received which is not in the record, including "three or four" laser surgeries for his left eye, the most recent approximately a year before the hearing, which would be about December 2008. (AR 26.)  Plaintiff testified that he planned to do no further surgeries because they had caused worsening rather than improvement in his eyesight, and he feared going blind. (AR 33-34.)

Plaintiff's argument is that the Commissioner's regulations provide that a further consultative examination, effectively development of the record, is required if "there is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established." (20 C.F.R. § 404.1519(a)B)(4).)  Plaintiff argues that his post-surgery documentation from his treating source is too technical to permit lay interpretation.  Further, Plaintiff testified that before his hearing, when he signed a form, he could not read it because of blurry vision.  Plaintiff points to other instances in which he was assisted in signing forms that he could not read because of visual acuity problems.

It is Plaintiff's burden to produce evidence that he is disabled. 42 U.S.C. § 423(E)(5)(a); 20 C.F.R. § 416.912(a).  The question for the Court to determine is whether Plaintiff's subjective complaints that his vision had deteriorated and continued to do so in the months after his eye surgeries constituted sufficient evidence or indicia of a change in his medical condition that required the ALJ to further develop the record, for example, by ordering an ophthalmologic CE.  In the absence of any comprehensible medical documentation of such deterioration (a fact with which Plaintiff does not quibble), the

4

resolution of this issue comes down to whether the ALJ was correct in depreciating Plaintiff's credibility.  Thus, the Court will address this second issue in conjunction with the first.

The ALJ concluded in his decision that Plaintiff's testimony regarding his vision problems was only credible to the extent that it was not inconsistent with the RFC assessment, which, as noted, did not provide for any vision limitations. (AR 14.)  The Court must determine whether the ALJ's specific credibility findings withstand scrutiny under case law and applicable regulations.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Social Security Ruling ("SSR") 96-7p.)

The ALJ noted that Plaintiff apparently drove a motor vehicle a year before the hearing (by virtue of his application for a driver's license renewal), which was the same time he claimed he had such blurry vision that he could not see documents well enough to sign them, and needed assistance to do so. (AR 13.)  Plaintiff concedes that his vision is insufficient to provide him with a driver's license under regulations of the California Department of Motor Vehicles. (See JS at 28.)  Nevertheless, he depreciates this reason for a negative assessment of his credibility because he attributes his application for a renewed driver's license at that time as simply a matter of unfounded optimism. (Id.)  But the Court does not view it in that light.  Rather, the Court assesses that the ALJ was reasonable in rejecting Plaintiff's claim that he had such blurry vision that he could not see the forms that he had to sign while at the same time, he applied for a driver's license to operate a motor vehicle.  Similarly, the ALJ noted that on a daily basis, Plaintiff checked his blood sugar level on a glucometer, something which would be highly unlikely for an individual who could not clearly see a form placed before him.

The ALJ also relied upon inconsistencies concerning Plaintiff's complaints of neuropathy in his legs and arms which allegedly occurred on a daily basis. (AR 30-32.) As the ALJ noted, there was no record that Plaintiff had ever received any neurological testing, and the report of the CE showed no abnormal physical or neurological findings. (AR 14, 180-184.) This inconsistency between medical opinions and subjective allegations in one factor which may be considered in the credibility analysis. See Thomas v. Barnhart, 278 F.3d 947, 958-959 (9th Cir. 2002).

The ALJ also relied upon Plaintiff's frequent noncompliance with medication for his diabetes, although Plaintiff claimed that his diabetes was controlled by medication. Also, despite Plaintiff's argument to the contrary, his recitation of the chronology of his treatment (see JS at 5-11), indicates numerous occasions when he missed follow-up appointments for his diabetes care. This is important because Plaintiff himself believes there is a causal connection between his diabetes and his vision problems. (AR 24, 30-32, 118, 154.) Consequently, it would not be expected that if Plaintiff suffered from such an extreme vision loss he would routinely miss followup appointments for his diabetes treatment. The ALJ concluded that Plaintiff was not taking his treatment regimen very seriously. (AR 14.) Case law provides that if a claimant complains of disabling pain but either fails to seek treatment or follow prescribed treatment for that pain, this may be utilized by an ALJ as a factor in the credibility analysis. See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007).

Thus, the Court concludes that there are sufficient evidence-based credibility factors in the record which were correctly analyzed

6

and relied upon by the ALJ in depreciating Plaintiff's credibility. Thus, Plaintiff's first issue must also fail.

## II

## THE ALJ PROPERLY CONSIDERED THE EVIDENCE

## AT STEP FIVE OF THE SEQUENTIAL EVALUATION

In his third issue, Plaintiff contends that after the ALJ found that he could return to his past relevant work at Step Four of the sequential evaluation, he made erroneous alternate findings at Step Five, indicating that Plaintiff's impairments had "little or no effect on the occupational base of unskilled medium work," and applied Medical-Vocational Rule 203.22. The ALJ found (AR 16) that even if Plaintiff had visual impairments which eliminated jobs involving very good vision, he retained sufficient visual acuity to handle other work with rather large objects, and there would thus be a substantial number of jobs remaining across all exertional levels. Plaintiff questions the ALJ's ability, without expert assistance from a vocational expert ("VE"), to determine whether Plaintiff's impairments significantly erode the occupational base.

The ALJ's determination was that by application of the Medical Vocational Guidelines, known as the "Grids," under Rule 203.22, a finding of "not disabled" would result. (AR 16.) An ALJ may rely upon the Grids even when a claimant has a combination of exertional and non-exertional limitations, if the non-exertional limitations are not so significant that they impact the claimant's exertional abilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds. The ALJ here found that even if Plaintiff had some visual impairment that might eliminate some jobs, a substantial number

7

of other jobs across the exertional levels would remain.  Plaintiff notes that sedentary work typically requires visual acuity that would enable working with small objects, but this argument is off point, since Plaintiff is not limited to sedentary work.  The ALJ assessed Plaintiff as having an RFC which would permit medium exertional work.  Finally, Plaintiff's argument that a VE should have been called by the ALJ lacks merit, because the ALJ properly determined that Plaintiff's non-exertional limitations, if they existed, would not significantly erode the occupational base such that a VE's testimony would be required.  In any event, the ALJ's Step Five analysis was done as an alternative to his Step Four conclusion that Plaintiff could return to his past relevant work.  Since the Court finds no error with regard to the Step Four analysis, the issue concerning alleged error with regard to the Step Five process is effectively mooted, in any event.

For the foregoing reasons, the Court finds no merit in Plaintiff's third issue.

The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: March 1, 2012                    /s/
                                   VICTOR B. KENTON
                                   UNITED STATES MAGISTRATE JUDGE